UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| MATTHEW JOHNSON et al., <br><br> Plaintiffs, <br> v. <br><br> PHILIP D. MURPHY, in his official capacity as Governor of New Jersey; GURBIR S. GREWAL, in his official capacity as New Jersey Attorney General; and JUDITH M. PERSICHILLI, in her official capacity as Commissioner of the New Jersey Department of Health, <br><br> Defendants. | HON. NOEL L. HILLMAN, U.S.D.J. <br> HON. JOEL SCHNEIDER, U.S.M.J. <br><br> Civil Action No. <br> 1:20-cv-06750-NLH-JS |

REPLY BRIEF IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

Jeremy M. Feigenbaum
State Solicitor
  Of Counsel and On the Brief

Stuart M. Feinblatt
Assistant Attorney General
   Of Counsel and On the Brief

Heather Lynn Anderson
Tim Sheehan
Deputy Attorneys General
  On the Brief

GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY
R. J. Hughes Justice Complex
25 Market Street
P.O. Box 106
Trenton, New Jersey 08625
*Attorney for Defendants*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………………......ii

PRELIMINARY STATEMENT…………………………………………………...1

ARGUMENT………………………………………………………………….....2

     POINT I

     PLAINTIFFS' STATE LAW THEORIES HAVE NO PLACE
     IN THIS CASE...…………………………………………………………2

     POINT II

     PLAINTIFFS FAIL TO STATE A CLAIM FOR A VIOLATION
     OF THE CONTRACTS CLAUSE.….………………………………………5

          A.    Black Letter Contracts Clause Principles Foreclose
          This Claim.……………………………………………………….....5

          B.    In The Alternative, The Contracts Clause Claim Is Not
          Cognizable …………………………….............................................12

     POINT III

     PLAINTIFFS FAIL TO STATE ANY OTHER
     CONSTITUTIONAL CLAIMS.…………………………………………...14

CONCLUSION…...…………………………………………………………15

# **TABLE OF AUTHORITIES**

## **Cases**

*Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234 (1978)……………………10

*Alvin v. Suzuki*, 227 F.3d 107 (3d Cir. 2000)……………………………...........14

*Armstrong v. Exceptional Child Center*, 575 U.S. 320 (2015)……………………..14

*Auracle Homes, LLC v. Lamont*, 2020 WL 4558682 (D. Conn. Aug. 7, 2020)…7, 8

*Avalon Bay Communities, Inc. v. Jackson*, 2013 WL 2096213
    (N.J. Super. Ct. App. Div. May 16, 2013)………………………………………8

*Baptiste v. Kennealy*, 2020 WL 5751572 (D. Mass. Sept. 25, 2020)………………..4

*Brontel, Ltd. v. City of N.Y.*, 571 F. Supp. 1065 (S.D.N.Y. 1983)……………….. 10

*Carter v. Greenhow*, 114 U.S. 317 (1885)……………………………………..12, 13

*Cmty. Realty Mgmt., Inc. for Wrightstown Arms Apartments v. Harris*,
    714 A.2d 282 (N.J. 1998)………………………………………………………..8

*Crosby v. City of Gastonia*, 635 F.3d 634 (4th Cir. 2011)……………………12, 13

*Dennis v. Higgins*, 498 U.S. 439 (1991)…………………………………………...13

*Elmsford Apartment Assocs., LLC v. Cuomo*, 2020 WL 3498456
    (S.D.N.Y. June 29, 2020)……………………………………………………….passim

*General Motors Corp. v. Romein*, 503 U.S. 181 (1992)…………………………….4

*Green v. Morgan Props.*, 73 A.3d 478 (N.J. 2013)………………………………....8

*HAPCO v. City of Philadelphia*, 2020 WL 5095496
    (E.D. Pa. Aug. 28, 2020)……………………………………………………10, 11

*Home Building & Loan Ass'n v. Blaisdell*, 290 U.S. 398 (1934)……………6, 10, 11

*Kaminski v. Coulter*, 865 F.3d 339 (6th Cir. 2017)……………………………12, 13

*Nat'l Assoc. of Theatre Owners v. Murphy*, __ F. Supp. 3d __,
    2020 WL 5627145 (D.N.J. Aug. 18, 2020)……………………………………….4

*Pascarella v. Swift Transportation Co.*, 643 F. Supp. 2d 639 (D.N.J. 2009)………...4

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984)………………….2

*Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot.*,
    560 U.S. 702 (2010)……………………………………………………………...14

*Sveen v. Melin*, 138 S. Ct. 1815 (2018)……………………………………………..5, 9

*Town of Castle Rock v. Gonzales*, 545 U.S. 748 (2005)……………………………4

*Troy, Ltd. v. Renna*, 727 F.2d 287 (3d Cir. 1984)…………………………….6, 7, 10

*U.S. Trust Co. of N.Y. v. New Jersey*, 431 U.S. 1 (1977)…………………………..5

*Village of Orland Park v. Pritzker*, __ F. Supp. 3d __, 2020 WL 4430577
    (N.D. Ill. Aug. 1, 2020)…………………………………………………………….3

**Statutes**

42 U.S.C. § 1983……………………………………………………………12, 13, 14

## **PRELIMINARY STATEMENT**

Black letter Contracts Clause principles readily dispose of Plaintiffs' claims. As the State previously explained, the Contracts Clause rarely prevents any State's exercise of its police powers to benefit the public; instead, challengers can prevail on their claim only where they can show a *substantial* impairment of a contract, and even then the challenge still fails if the law reflects an appropriate effort by the State to achieve a legitimate policy goal. The stringency of that legal test is no doubt why both courts to consider analogous Contracts Clause challenges rejected them.

Perhaps because Plaintiffs' claims are so inconsistent with modern Contracts Clause cases, Plaintiffs attempt to reconceptualize the constitutional analysis in two ways. First, Plaintiffs argue that EO 128 contravenes the Contracts Clause because the Governor lacked authority to issue it under *state* law. But that backdoor effort to bring in state law claims otherwise barred by New Jersey's sovereign immunity is unavailing. The Contracts Clause asks whether a state law substantially impaired a contract and did so without a legitimate purpose; it does not ask about the *process* the State used to adopt it. Second, Plaintiffs spend six pages promoting a restrictive interpretation of the Contracts Clause that has been consistently rejected by courts since the Great Depression, including most recently by *eight* justices on the Supreme Court.

Instead, this Court must apply the established Contracts Clause analysis and dismiss on that basis. EO 128 represents a valid exercise of the Governor's power to address the profound economic and public health effects of the once-in-a-generation pandemic and prevent a wave of evictions the moment it ends. The State's decision to do so by allowing residential tenants to credit their security deposits towards rent during the emergency and immediately thereafter, while protecting landlords' rights, does not significantly impair contracts—and represents a reasonable and temporary measure to address the devastating consequences of COVID-19.

## ARGUMENT

### I. Plaintiffs' State Law Theories Have No Place In This Case.

Despite abandoning their state law causes of action, Plaintiffs base much of their federal Contracts Clause claim on the view that EO 128 exceeds the Governor's authority under New Jersey law. *See* Plaintiffs' Opposition brief (Pb), 8-10. But this argument is barred by sovereign immunity and irrelevant to the federal claims.

*First*, this Court lacks authority to consider whether EO 128 is consistent with New Jersey law, *see* State Br. 16-17, and there are no applicable exceptions to that sovereign immunity. Although Plaintiffs argue EO 128 is *ultra vires* under state law, Pb9, this exception applies only if an official acts "without any authority whatever." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 n.11 (1984). In other words, this exception does *not* apply if the official acted pursuant to a delegation of

authority but allegedly took it too far. There is a good reason for that: it keeps federal courts out of disputes regarding state separation of powers, respecting principles of comity and state court authority that are central to our system of federalism.

That principle squarely resolves these state law claims. *See Village of Orland Park v. Pritzker*, __ F. Supp. 3d __, 2020 WL 4430577, at *13 (N.D. Ill. Aug. 1, 2020) (in a similar challenge to COVID-19 orders, finding allegations that Governor "exceeded his statutory powers" did "not render his actions *ultra vires*"); *Elmsford Apartment Assocs., LLC v. Cuomo*, 2020 WL 3498456, at *6 (S.D.N.Y. June 29, 2020) (agreeing *ultra vires* doctrine is inapplicable if "claim is not that the Governor lacks the power to respond to the COVID-19 emergency—only that he has abused that power"). Plaintiffs do not claim the Governor lacked *any* authority to respond to this emergency, only that EO 128 "exceeds [his] power" under the statutes. Am. Compl. at 2. This claim does not fall within the narrow *ultra vires* doctrine.

*Second*, Plaintiffs get no further in arguing that their *federal* Contracts Clause claim is strengthened by alleged violations of *state* law. *See* Pb8-9. The Contracts Clause analysis asks whether there has been a substantial impairment of a contract, and whether the impairment is tailored to advancing a legitimate aim. Such questions in no way turn on whether the order is consistent with state separation of powers. In arguing to the contrary, Plaintiffs rely on procedural due process case law, but that separate constitutional analysis *requires* courts to resolve questions of whether state

3

law recognizes the property interest at issue—an inquiry unique to the due process context. *See* Pb8-9 (relying on *Pascarella v. Swift Transportation Co.*, 643 F. Supp. 2d 639 (D.N.J. 2009)); *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756-57 (2005) (noting unique "state-law underpinnings" of due process).[1]

*Third*, Plaintiffs' state law claims also have no bearing on whether the Court must defer to the State in the Contracts Clause analysis. *See* Pb27-28 (arguing typical deference owed is "inappropriate" where the Governor "took from the legislature its right to effect laws"). For one, this argument rests on the finding that the Governor violated New Jersey law in issuing EO 128, which is again foreclosed by sovereign immunity. For another, because executive orders are "given the effect of a legislative statute for the purposes of constitutional review" in the Third Circuit, the deference that applies to state statutes also applies to them. *Nat'l Assoc. of Theatre Owners v. Murphy*, 2020 WL 5627145, at *7 (D.N.J. Aug. 18, 2020).[2] Finally, the Contracts Clause addresses only the law's impact on contracts, not the process or political body that generated the law. Said another way, whether a law has justification *sufficient*

---

[1] Plaintiffs also rely on *General Motors Corp. v. Romein*, 503 U.S. 181 (1992), for support, *see* Pb9, but that case does not even address sovereign immunity. Instead, it simply noted that in Contracts Clause cases, courts must decide whether a contract existed in the first place under state law. *Id.* at 186-87. That is irrelevant here.

[2] *Baptiste v. Kennealy*, 2020 WL 5751572 (D. Mass. Sept. 25, 2020), is not to the contrary. Pb28. *Kennealy* states only that the same deference is not owed where the state law affects the State's fiscal self-interest, which is not the case here. *Id.* at *19; *see also* State Br. 27 n.6 (agreeing deference to States is reduced in such cases).

*for federal constitutional purposes* does not vary depending on whether the law was enacted through statute, order, regulation, or ballot initiative, and thus the deference owed to the State in such cases does not vary either.

## II.     Plaintiffs Fail To State A Claim For A Violation Of The Contracts Clause.

### A.     Black Letter Contracts Clause Principles Foreclose This Claim.

As the State explained in its opening brief, the modern and binding Contracts Clause analysis places a heavy burden on challengers who seek the invalidation of a state law. Plaintiffs' responses—that EO 128 is unconstitutional under the original understanding of the Contracts Clause; that there was a substantial impairment here; and that EO 128 lacks an important purpose and is unreasonable—are unavailing.

1. Plaintiffs devote six pages of their brief to a framework the Supreme Court has expressly rejected. Pb13-19. Specifically, Plaintiffs argue the Clause should be read to prohibit *any* law that impairs contractual obligations, and to permit only some laws impairing contractual remedies. *See id.* at 17-19. The problem for Plaintiffs, of course, is that this distinction is not the law. *See U.S. Trust Co. of N.Y. v. New Jersey*, 431 U.S. 1, 19 n.17 (1977) (rejecting the "remedy/obligation distinction"). Indeed, in the most recent Contracts Clause case, *eight* justices relied on the established two-step approach to the Contracts Clause, and just one agreed with Plaintiffs. *See Sveen v. Melin*, 138 S. Ct. 1815, 1821-22 (2018). Further, adoption of Plaintiffs' analysis would invalidate all manner of beneficial state economic or health laws which have

5

been previously upheld. *See, e.g., Troy*, *Ltd. v. Renna,* 727 F.2d 287 (3d Cir. 1984). This Court must follow binding case law and reject Plaintiffs' opening salvo.

    2. Under the traditional analysis, as two federal courts have held, EO 128 does not substantially impair landlord-tenant contracts for two reasons: residential leases are heavily regulated under the Security Deposit Act ("SDA"), State Br. 19-24, and the order allows landlords to effectively safeguard and reinstate their legal rights, *id.* at 24-26. Plaintiffs fail to effectively rebut the State's arguments on this score.

    *First*, while Plaintiffs admit leases are heavily regulated, they contend that EO 128 is invalid because landlords could not "have ever anticipated that the Governor would nullify their security deposits." Pb21. Plaintiffs misunderstand the governing analysis. The question is not whether a plaintiff should foresee the *precise* change at issue. Were that the law, then all impairments would be "substantial," because every impairment by definition changes the status quo on which individuals were relying.[3] Indeed, accepting Plaintiffs' view would require abrogating a string of federal court decisions upholding laws that retroactively changed the terms of leases because such leases are heavily regulated. In *Troy*, for example, the Third Circuit upheld a law amending eviction protections without finding that landlords could have anticipated

---

[3] Plaintiffs' unprecedented claim would also disfavor emergency orders—where the animating crisis is hard to predict, and so the need for a particular change is hard to anticipate. But *Home Building & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 444 (1934), made clear the Contracts Clause is especially accommodating of States' emergency-related justifications, again undercutting Plaintiffs' approach.

these *precise* changes; it sufficed that leases were highly regulated and legal changes could be expected as a general matter. *See* 727 F.2d at 297.

Instead, the proper analysis is clear—because leases and security deposits are already heavily dictated by state law, a change to their terms is particularly unlikely to qualify as "substantial." *See Elmsford,* 2020 WL 3498456, *14; *Auracle Homes, LLC v. Lamont*, 2020 WL 4558682, *17 (D. Conn. Aug. 7, 2020); *Troy*, 727 F.2d at 297. Indeed, Plaintiffs *admit* security deposits are governed by state law rather than by contract. *See* Pb22. Simply put, the State can change its own laws governing the use of security deposits, and any assumptions that it would not do so—even during an unprecedented emergency—are insufficient to limit its police power.

*Second*, as an independent matter, there is no substantial impairment because EO 128 allows Plaintiffs to safeguard their rights in multiple ways: it leaves in place the tenant's responsibility to pay rent or for repairs; requires tenants who renew their leases to pay back the amount of the deposit at the time of renewal or sixty days after the emergency; and maintains other legal remedies available to landlords to recover for rent and repair, including resort to court. *See* State Br. 24-26.

Plaintiffs' argument in response—that the Order changes *how* landlords could safeguard their rights, requiring them to file small-claims actions rather than recoup costs from a security deposit—entirely misses the point. *See* Pb24. The premise of a Contracts Clause claim is that there has been some change affecting a party's rights;

7

the "substantial" impairment analysis asks instead whether there are still *other* ways a contracting party can satisfy their interest. *See, e.g., Elmsford*, 2020 WL 3498456, *14. (Indeed, were Plaintiffs' contrary approach correct, then all impairments would *ipso facto* be substantial ones, and there would be no point to this inquiry.[4]) And that is dispositive here: "that landlords would prefer not to avail themselves of their legal remedies—because it is often not worth the trouble to pursue a deadbeat tenant—does not mean that the state has impaired their contractual rights." *Id*.[5] Plaintiffs have no answer to this, but just as *Elsmford* and *Auracle Homes* upheld a state law authorizing tenants to apply a security deposit to unpaid rent, so too should this Court.

---

[4] The same response applies to Plaintiffs' claim, repeated throughout their brief, that they "explicitly contracted for security deposits as a condition of their leases." Pb21. In *all* Contracts Clause cases, plain terms or settled understandings are affected by subsequent changes. The point of the substantial impairment prong is that this is not enough: the history of state regulation and the other available remedies matter too.

[5] The Court should reject Plaintiffs' claim that EO 128 incentivizes their tenants to withhold rent to force landlords to deplete the security deposit. Pb25. EO 128 states that tenants remain liable for any amounts due for unpaid rent, EO 128, ¶ 2(a), such that this hypothetical tenant would derive no benefit from withholding rent, and in fact may be worse off by having to pay late fees or attorneys' fees when a landlord prevails in his small claims action. *See Green v. Morgan Props.*, 73 A.3d 478, 489 (N.J. 2013) (leases may include late fees); *Avalon Bay Communities, Inc. v. Jackson*, 2013 WL 2096213, at *3 (N.J. Super. Ct. App. Div. May 16, 2013) (enforcing same); *Cmty. Realty Mgmt., Inc. for Wrightstown Arms Apartments v. Harris*, 714 A.2d 282, 293 (N.J. 1998) (noting courts enforce attorneys' fees provisions); Am. Compl. Exs. 2-4 ¶ 23, 6, 8, Dkt. 15-2 (attorneys' fees provisions in these leases).

3. While Plaintiffs' failure to demonstrate a substantial impairment is enough to dispose of their challenge, they are also unable to refute the State's showing that EO 128 is "an appropriate and reasonable way to advance a significant and legitimate public purpose." *Sveen*, 138 S. Ct. at 1822. As the State's opening brief explained, the purposes advanced by EO 128 include providing economic relief to struggling tenants; minimizing the health risks associated with a wave of evictions that would otherwise follow expiration of the eviction moratorium; and avoiding putting tenants in the unenviable position of choosing between paying rent and funding essential health care expenses during a pandemic. *See* State Br. 27-28.

Plaintiffs' responses fall short. *First*, Plaintiffs are wrong to deny that EO 128 serves legitimate public goals. Plaintiffs do not dispute that EO 128 seeks to achieve the economic and public health benefits described above, but argue only that its aims are illegitimate because the Order "benefits only one group: residential tenants" and not "the broader public generally." Pb30. This is wrong and irrelevant. As to why it is wrong, the State already explained that EO 128 is just a part of the State's holistic economic response to COVID-19, which includes separate programs providing relief specifically to homeowners and residential landlords. *See* State Br. 31 (noting, *inter alia*, actions to protect residential landlords from foreclosure and compensate small residential property owners who lost rent revenue due to COVID-19).

Regardless, Plaintiffs' response is irrelevant: a law unquestionably can further the public interest even if it focuses on meeting the needs of one large subgroup at a time. Almost no state economic law applies to everyone in precisely the same way; to the contrary, courts have repeatedly upheld laws that protect tenants from eviction, *see Troy*, 727 F.2d at 297; that protect mortgagees during an economic emergency, *see Blaisdell*, 290 U.S. at 444-45; and that protect tenants through rent control rules, *see Brontel, Ltd. v. City of N.Y.*, 571 F. Supp. 1065 (S.D.N.Y. 1983). Each focused on a particular problem for a particular group, but was upheld under the Contracts Clause. This case is an especially compelling example of why: the problems arising for tenants, including a potential wave of evictions that undermine public health, are unique to them, and the economic policy solutions are likewise unique. That is why another court recently upheld a law affording temporary rent relief against the same argument, concluding the law "was passed in the midst of an economic emergency which threatened the loss of homes" and advanced "a significant and legitimate purpose," even as it "only seeks to protect renters." *HAPCO v. City of Philadelphia*, 2020 WL 5095496, *9 (E.D. Pa. Aug. 28, 2020).[6] The State can tackle particularized economic problems using the particular tools that befit them.

---

[6] In so doing, the Court distinguished *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234 (1978), which invalidated a law imposing a pension funding charge on a narrow class of employers. *See* Pb30 (relying on *Spannaus*). As *HAPCO* explained, that law "applied only to very few employers, and only in very rare situations," in contrast to the broad impact of rent relief here. 2020 WL 5095496, at *9.

*Second*, Plaintiffs' claim that EO 128 is insufficiently tailored fares no better, especially given the deference owed to the State. Most importantly, as the State has already laid out, EO 128 is a reasonable *temporary* measure designed to address the unprecedented economic and health crises caused by COVID-19. State Br. 30-32. Although Plaintiffs baldly assert that EO 128 is not time limited and therefore is not tailored to the emergency, *see* Pb32-33, that is wrong: limiting the reach of EO 128 to two months after this emergency *is* a "temporal limit." That New Jersey chose to cover the period of the emergency, and not specify any date certain of expiration, is unsurprising: when EO 128 issued the contours of how long the economic and health crises would last and when a vaccine would be widely available remained unknown, and the State needed to be flexible. And it was reasonable to extend this measure for two months after the emergency to prevent the wave of evictions for non-payment that would occur if EO 128 expired the instant the emergency ended. *See HAPCO*, 2020 WL 5095496, *10 (agreeing that it was "not unreasonable for City Council to determine that, after the havoc that COVID-19 has wreaked on the economy, renters would need protections that extended past the emergency period"). The very case on which Plaintiffs rely, *Blaisdell*, 290 U.S. at 416, had an end date of *two years* after issuance—3.5 times the total length that EO 128 has been in effect.

Plaintiffs further claim that it "is not difficult to conceive of ways to tailor a law more closely to EO 128's stated purpose," but they fail to identify any specific

11

alternatives New Jersey should have adopted that would have achieved its goals as effectively. Pb35. That is fatal because the State is "ordinarily entitled to deference" as to the tailoring prong, *United Steel*, 842 F.3d at 213, meaning Plaintiffs must do more to satisfy their burden. And in reality, the State did act narrowly, addressing the crisis renters face by allowing them to expend a deposit that *they own*, while still leaving them on the hook for all rent and property damage they owe. For another, Plaintiffs argue that New Jersey's law is insufficiently tailored since "nothing in EO 128 compensates Plaintiffs" for "additional costs of litigating small-claims actions" over property damages. Pb36. But the failure to provide compensation plays no role in the *tailoring* analysis. In any event, the mere fact "that landlords prefer not to avail themselves of their legal remedies" does not show New Jersey failed to reasonably relate the Order to its public purpose. *Elmsford*, 2020 WL 3498456, *14.

The Contracts Clause does not prohibit this temporary measure to protect New Jersey's tenants from the economic and public health fallout of this crisis.

### B. In The Alternative, The Contracts Clause Claim Is Not Cognizable.

As the State explained in its opening brief, the Sixth and Fourth Circuits have ruled in recent and detailed decisions that private plaintiffs cannot pursue claims for violations of the Contracts Clause under § 1983. *See Kaminski v. Coulter*, 865 F.3d 339, 347 (6th Cir. 2017); *Crosby v. City of Gastonia*, 635 F.3d 634, 640 (4th Cir. 2011). Those decisions relied on *Carter v. Greenhow*, 114 U.S. 317 (1885), which

held that the Contracts Clause did not protect individual rights enforceable under the predecessor federal statute to § 1983. The decisions in *Kaminski* and *Crosby* provide an independently sufficient basis to reject the Contracts Clause claim.

Plaintiffs primarily diminish the importance of *Carter*, which they refer to as "a single case from 1885," Pb11, ignoring entirely the recent circuit decisions that recognize *Carter*'s continued vitality.[7] (The opposition brief does not even mention these decisions, let alone distinguish them.) Nor do Plaintiffs get further by relying on a series of Supreme Court decisions that distinguished *Carter* in brief passages and in no way overruled that decision. *See* Pb11-12. In *Dennis v. Higgins*, 498 U.S. 439, 451 n.9 (1991), to take one example, the Supreme Court distinguished *Carter* when ruling that a private litigant can pursue a § 1983 action based on the Commerce Clause rather than the Contracts Clause. If anything, that discussion indicates *Carter* is still good law for *Contracts Clause* suits like the instant case.

Plaintiffs also assert that the Court can decide their Contracts Clause claim under its inherent equity jurisdiction. Pb12. But Plaintiffs did not plead this basis of

---

[7] Plaintiffs assert that the *Carter* plaintiff sought redress under a contract with the state rather than rights secured under the Contracts Clause. Pb12. This is inaccurate: the plaintiff in *Carter* alleged he had been deprived of constitutional rights under color of state law and sought redress under the operative federal civil rights statute. 114 U.S. at 319-320. The *Carter* Court recognized that the Contracts Clause was the relevant constitutional provision, but held such claims were not cognizable under the governing civil rights statute because it did not directly confer upon or secure to individuals a constitutional right. *See id.* at 322.

13

jurisdiction and, in any event, the cases they cite do not support their broad claim. Plaintiffs primarily rely on *Armstrong v. Exceptional Child Center*, 575 U.S. 320 (2015), which found that even in the absence of a private cause of action under a federal constitutional provision, a private litigant may be able to seek an injunction in federal court claiming a violation of a federal *statute*. *See* 575 U.S. at 326-67. This proposition does not apply to this case since Plaintiffs are not suing under a federal statute (other than to use § 1983 to claim constitutional violations) but rather under a constitutional provision that does not confer a private right of action.

### III.  Plaintiffs Fail To State Any Other Constitutional Claims.

Plaintiffs' remaining claims—which comprise fewer than four pages of the opposition brief—are unavailing. As to due process, Plaintiffs admit their argument is based on the alleged interference with their "right to contract," Pb37, precisely the same interest addressed by the Contracts Clause. Pb10-36. But when "a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot.*, 560 U.S. 702, 721 (2010). Plaintiffs have no response to this dispositive point.[8]

---

[8] And insofar as Plaintiffs are making a procedural due process claim, they failed to take advantage of the existing procedural remedies available, *i.e.,* appealing EO 128 to the Appellate Division. *See Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000).

As to equal protection, Plaintiffs complain the State "grant[ed] special relief to residential tenants," but without identifying the *similarly situated* group that was discriminated against. *See* Pb39-40. For one, Plaintiffs' issue again seems to be with alleged noncompliance with *New Jersey* law, *see* Pb39 (claiming that "deference is inappropriate" on this equal protection claim "given this case of executive fiat"), but whether or not a law is consistent with federal equal protection principles has nothing to do with its consistency with state separation of powers. *See supra* at 2-5. And for another, when one conducts the actual federal equal protection analysis, it is at least rational to focus on residential tenants to prevent the potential wave of emergency-driven evictions that will afflict them. *See* State Br. 37-39. Plaintiffs fail to show that EO 128 is attenuated from that economic and public health goal.

## **CONCLUSION**

This Court should dismiss Plaintiffs' Amended Complaint in its entirety.

Respectfully submitted,

GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY

By:  /s/ Stuart M. Feinblatt
Stuart M. Feinblatt
Assistant Attorney General

Dated: December 9, 2020

15